I turn to the third case to be argued this afternoon, Rachel Henderson v. Greenville Central School District. Ms. Savarese. Good afternoon, your honors. My name is Ashlyn Savarese. I represent plaintiff, appellant Rachel Henderson. The district court's decision states that a public employee who speaks about a possible threat of school violence can be fired. Where school safety is one of the most important concerns of this country today, this will have immense consequences. That's not what the district court said. The district court said if the grievance is about one particular child, that teacher's child, then it's not a matter of public concern. Isn't that what the district court said? The district court didn't say that issues of dangerous students is not a matter of public concern. It said because your client was singularly focused on her child, that then it wasn't a matter of public concern. Isn't that what the district court said? It is what the district court said, but it ignored the fact that a speaker can have a dual motive. Well, let me ask you about that, because I went back into the 50H hearing, your client's testimony, the deposition. And just to take the 50H hearing, on page 15, she said, I was concerned for my child's safety. And then I counted seven more times where she said essentially exactly that. I was concerned about my child's safety. I was concerned about my child's safety. I was concerned about my child's safety. And then in her deposition, this is appendix 89, I just wanted to check and make sure that he's not near my kids. So maybe I missed it. Point to anywhere in her testimony where she said, I told them I was concerned about all students at the school or someone beyond her own kids. Where is that? Well, if you look at, I believe, the appendix, page 365 at the very bottom, it is the October 4th termination letter. Ms. Sutherland acknowledged that in the September 28th meeting that Ms. Henderson had with school administration, that she did express that she had concerns about, quote, the safety of students at the school district concerning the current or prior behaviors of a particular student. You're talking about at the September 28th meeting? Yes, so Ms. Sutherland is referring to the September 28th meeting in the- Let's assume that's true. There's an email, this is at appendix page 350, where, I don't know how you pronounce the name, Ms. Acousti? I believe Acousti, yes. Right. Recounting what your client had done during the meetings, talking to the other teachers. We want her gone. So isn't it pretty clear from the record that what happened at the September 28th meeting or in the letter of September 30th, from a causation standpoint, was not the reason your client was fired. They had already decided we want her gone before the September 28th meeting. So why would that be what we look at to see their reasons for terminating her? Because they didn't give her an opportunity to be heard before being terminated. But if it's not a matter of public concern, she complains about her child's safety. They determined it was inappropriate the way she did it. We're firing her. We want her gone. But then, at some later time, she says something more broadly about dangers in schools. Why would that be dispositive on the question? They've already made the decision to fire her based upon what they perceive to be improper conduct about complaints about her own child. Well, if you look at her speech, at the open house, she's asking about the student. Do you know anybody by the name of the student's last name? I have a concern that my husband wanted me to ask. Apparently, the kid spent some time in jail, and he could be dangerous. I think in that speech, it shows that there's a concern there. There's a possibly dangerous student in the school. It's not just he could be around her son. He could be around any child. You're leaving out, in every one of those instances, she said, I want to make sure he's not at lunch with my child or in gym class with my child. There was no point where she testified, during any of those conversations, where she expressed any concern about danger to students generally. But you can point me. When I asked you that, you pointed me to the September 20th meeting. But I'm asking you, during those discussions, did she ever testify in her deposition that she expressed a concern about student safety generally? I read every one of those instances, and she said the opposite. She emphasized, actually, on each occasion. I was worried only about my child. I was worried about my child. I was worried about my child. So I think that's really the key to the district court's decision in this case. And I don't think the district court missed anything in the record. And you're not telling us anything that was missed. Back to going to dual motivation. It's hard to separate a parental concern about one's own child from the child that's at the same school where there was just another threat the month before. The student was going to shoot up the same school that her child is going to start in. It's hard to separate any sort of, well, actually, I'm sorry. But I will go to this quote that this court quoted the Fifth Circuit. Mixed motivations are involved in most actions we perform every day. We will not hold plaintiffs to Herculean standards of purity of thought and speech. And that was from Johnson v. Ganim. The district court's decision is essentially holding Ms. Henderson to that Herculean standard where she's not allowed to have a concern for her child. And if you look at her speech the following day after the open house, she's not saying how she's concerned for her child. She's been told already that her child's not going to be around this potentially dangerous student. She's now wondering, well, what is this student like? So she goes and asks another teacher, hey, do you know this student? And once that teacher says, I do, he's a good kid, it's done. It's left after that. She doesn't blast it on social media or anything. But her concerns have basically been addressed at that point. So I would say that even though she is concerned about her son, as this court stated in Chaffee v. Averill Park Central School District Order of Education, having a personal stake or motive in speaking does not on its own vitiate the status of the speech as one of public concern. You also have to look at the content form and context. In the context of 2018, we had a massive increase in threats to schools and shootings. We had Parkland, we had Santa Fe. Unfortunately, that hasn't gone away. Isn't part of the context also the fact she was informally questioning other teachers about this, rather than if you had what you believe to be a dangerous student who was dangerous to the entire school, you would go, as they point out, under the protocols, to an administrator, to the principal, to a school board meeting, something where you would be raising a public concern in that type of forum. So why isn't that also another indicator that this really was just about her child, that she didn't raise it with the principal or the school board or some other body? Well, at that point, Ms. Henderson had very limited information. She was just told by her husband, who had heard more information than she did, that the student was 18 years old, I think she had the last name, and that he was dangerous. No, I'm talking about after she had these meetings. I thought you said that even after she had these initial discussions, she was still concerned. So even if she knew her child was potentially not going to come in contact with this kid, then if she was concerned about school safety generally and all the students, she would have complained or brought it to the attention, because even though her son was not going to have contact, certainly the other kids were, and she was worried about them. I'm going to tell the principal, even though my kid is apparently not in danger, because I want to make sure these other kids are safe, too. That's not what happened here, right? Right, but I don't think she trusted the last. teacher that she had spoken to at the open house. So she wanted to speak with someone that she did know, and so I think she wanted to get a better confirmation just for herself as to what someone she knows would say to her about this student. And I still think she probably still didn't have enough information to bring it to administration, and not to mention she was not working as a teacher or an aid monitor in these instances. She was speaking as a citizen, but I believe that maybe if she had more information, she would have gone to the administration, but she did not at the times that she was speaking. Thank you, Ms. Savarese. You've reserved one minute. Thank you. Mr. Faciponte. Mr. Faciponte, are you a member of the Frank Miller firm? Yes, I am, Judge. You're admitted to practice. I have applied pro hoc vice, and that motion was granted. Thank you. Yes. Thank you very much for allowing me the opportunity to be heard today. I'm not going to belabor most of the points in our briefing, judging from the court's questioning. The briefing has certainly been considered. There are some things, though, that I would like to note, particularly regarding the fact pattern here, because much of Appellant's briefing muddies the waters a bit. First and foremost, what Appellant knew prior to the September 21st open house was strictly based on her husband's allegations of gossip that this child, we'll call him student SQ, was a bad kid, was spending time in jail, and was kicked out of the school. Nowhere in the testimony or record does anything from plaintiff indicate that she knew facts at that time that would have rendered him a danger to the school population at large. Rather, plaintiff knew, or I'm sorry, Appellant knew of certain things that she personally judged to pose a risk to her children because of their stature, the difference in size. I don't know if I necessarily agree with that. Some of the things that were said about the kid, I think it was something about an arson, having done an arson, right? So, certainly, if you had information, whether it's reliable or not is a different story, but if you had information that there was a kid in the school that had done an arson, that would go beyond her child, right? It's not a bullying situation, in other words. Someone who committed an arson would pose a danger potentially- And that is personalizing the point. To the whole school. She could have framed this in a way that would raise a matter of public concern. Whether she did or not is a different story. But I have a hard time agreeing with that point, that the nature of the information here wouldn't lend itself to an issue of public concern, potentially. Judge, this is exactly the point that I was attempting to address here. There's been a significant deal of muddying the waters, shall we say, in the briefing and replies. My understanding of the record, though, is that on the September 21st open house, plaintiff did not know of those arson allegations, the burning down of a solar panel, etc. That was all after acquired information that she dredged up herself in response to the school's termination letter and intent to terminate her. So those things were not known by her on the September 21st. What did she know at the time, then? Only thing she knew at the time, as I said, was that she was alleging this student, this special ed student, was a bad kid, had spent time in jail, and had been previously kicked out of schools. Those three specific things are what the record in my reading, and I believe upon her admission and the confirmation of her husband's testimony, bears out. Well, if she knew he was, you said, a bad kid, bad enough to have been disciplined, it's not much room from there to that he's a danger, is there? I think it is, Judge, especially where every student is due a free and appropriate public education. She is not alleging that he engaged in any in-school conduct that would make him a danger to the district community or the educational environment of other students. He can have engaged in bad conduct outside of school, but if he has behaved appropriately in school for this school district, he's due a free and appropriate education. If you could use the word danger, I want to know, is he a danger? Does that put it over the line to a matter of public concern? I don't think that it puts it over a line to a matter of public concern, because of the fact that there is no supposition, allegation, or anything in this record that he committed some sort of in-school conduct that could put his peers at risk. So let me give you a hypothetical, because I'm not sure I completely understand the point you're trying to make, but maybe this will help. So if a teacher has a child in a school, right? She goes to the principal where her child is in school, not where she works. She says to the principal, I've learned that there's a child in this school who spent time in jail who I think may be dangerous to the students as a whole. I'd like you to look into this. I don't know the details, but my understanding that he's dangerous. And the principal says immediately, how dare you ask me that question? And I'm firing you, you're fired. You're not going to teach here anymore. Your suggestion would be under those circumstances the teacher would have, that the parent would have no protection, that that wouldn't have been raising a matter of public concern? No, Judge, I wouldn't go that far. All right, so it's not necessarily the level of information that she had that makes it an issue of public concern or not, right? I think it's a combination of both information and circumstance. Here we have no meeting with the principal behind closed doors. We have gossiping with an assortment of teachers that she was semi-familiar with from the scope of her employment. We have no statement that she fears that this child is a danger to the community as a whole. She specifically, and as Your Honor pointed out, a great number of times addresses how she believes that this child is a danger to her children. Her husband clarifies, and I believe she clarified as well. Did she use the word danger? No, I don't believe she used the word- Well, I understood you just now to say she inquired, was he a danger to my child? I just do not want to misstate the record. I believe that she used the word dangerous. Dangerous? Dangerous to my child. Okay, because I want to explore this with you. Yes. And this is what troubles me a little about all these cases that try to draw a line between a matter of personal concern and public concern. Of course. It's not the brightest line in the world, as our 50 cases indicate. I understand, Judge. If she said, I'm complaining to you that you're picking on me because I'm generally late to my class, that's clearly personal, right? I would say so, Judge. Okay. When you get to something like danger, what troubles me is whether that kind of talking about danger sort of straddles both sides of the line. Because if a kid is a danger, it can properly be a matter of concern to the parent of that kid, but it's also a matter of concern to all the parents. Judge, I understand- You're far removed from an employment-related grievance, right? I understand your point, Judge, but I would reply that this is where the circumstance needs to come into play to help define whether the use of that language is appropriate in the context. If not, giving free license to any teacher to constitutionalize their speech by throwing in the word danger I believe has some inherent issues, particularly when dealing with the demand that every student be provided a free and appropriate public education. We do not want certain students targeted because they have, say, a bad reputation. That's very important, I think, to providing education to everybody. Reputation for what? I mean, I agree with you, certainly not a bad reputation for just talking loudly in class or something like that. Judge- That's why I focused on that word danger. I think that we don't have to reach that point here because the appellant in this case did not know of or articulate a specific danger at the time that she made her speech. That's further argument to the point that she should not have made the speech at all because she just vaguely began to describe this child to other individuals who she knew from her employment as dangerous. At that time, she did not know, as Your Honor mentioned, about the solar panels. That information was acquired before September 30th. So when she first made these comments, they only could have been personal to her and based on nothing more than her own speculation. As she said, they were related to her children interacting with these kids in gym class and in lunch and in those specific venues. Yeah, I take your point that they related to her child and therefore were a concern to her. What I'm wondering is what sort of words or indeed whether the words she in fact used straddled both sides of the line were of concern to her and also whether she meant it or not would be of concern to all parents of those children. Judge, I think that this is where the previous Second Circuit cases on the importance of motive and intent when focusing in on this analysis of the speaker comes into play. We have to look at the surrounding circumstances, as I said, to be able to determine what she, as you said, really believed. So her motive is relevant? I do believe so, and I believe the case law bears out that her motive in showing that this was a personal concern is indeed relevant. That is a contested point in the briefing. Can you mention intent also? The intent that she was making, I believe, is relevant at the time that she was speaking. Now, not speaking of an intent that she wants to go back and provide an ad hoc explanation to. Well, but that approach must have some limits. I mean, if she comes to the person she talked to and said, I'm very concerned about my son because he sits next to this kid who comes to school with a hand grenade in his pocket. Yes, Judge. Would that be a public concern? It would. I would point the court to the matter of Spencer v. New York City School District, I believe, or City of New York School District. In that case, a teacher witnessed criminal conduct. And upon witnessing or being reported of criminal conduct, that speech becomes protected in making those reports. So your argument is neither her motive nor the information she had implicated the students at large. Absolutely. It's a combination of her motive, which was focused on the child, and the particular information, unlike the hypothetical Judge Newman proposed. Hers was so general that it didn't, by its nature, implicate students. It's similar to like bullying, for example. You could have one student bullying another. It's between two students, but it doesn't implicate students at large. You could have bullying, potentially, both by motive and by circumstance, affect students generally, but not in every situation. Personally, Judge. Yes. Thank you. Thank you. I'd like to point out, motive is not dispositive. But she could also have been duly motivated, like I was saying before. She's a parent. And what parent doesn't want to try to protect their child? But also, when she uses the word dangerous, that does imply that the student could possibly, maybe not target her son, but maybe target somebody else within the school. And when it comes down to what information the parent, employee, reporter, will callers brings to another school district employee, with basically, it's saying that the parent would always have to be right, that there always is a concern. But isn't the point of trying to prevent school violence, opening up communication and starting a dialogue and saying, hey, I have some concerns about a student who I heard might be dangerous. What can you tell me about this person? And if it maybe rises to a level, and then she can go to the administration. And that's my time. Thank you. Thank you, Ms. Severs. Thank you, counsel. We'll reserve the decision, and we're adjourned.